IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Terrell McCoy, #256070, ) | Civil Action No.: 9:12-474-MGL |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER AND OPINION** |
| ) | |
| Warden David Michael McCall, ) | |
| Lieutenant Madden; Nurse Allison ) | |
| Young, Sergeant Lindsay; Lieutenant ) | |
| Robertson; Miriam Snyder, Ms. Davis, ) | |
| and Lieutenant Daniel Harouff, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This is an action by Plaintiff Terrell McCoy, proceeding *pro se*, against Defendants Warden David Michael McCall, Lieutenant Madden, Nurse Allison Young, Sergeant Lindsay, Lieutenant Robertson, Miriam Snyder, Ms. Davis and Lieutenant Harouff ("Defendants") alleging violations of his constitutional rights. (ECF No. 1.) He asserts claims for relief under 42 U.S.C. § 1983. Defendants deny Plaintiff's allegations and filed a motion for summary judgment on September 17, 2012. (ECF No. 59.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 of the District of South Carolina, this matter was referred to United States Magistrate Judge Bristow Marchant for pretrial handling and a Report and Recommendation ("Report"). (ECF No. 87.) The matter now comes before the court for review of the Report issued on January 24, 2013, wherein the Magistrate Judge recommended that the court grant Defendants' motion for summary judgment. (ECF No. 87). Plaintiff filed timely objections to the Report on February 12, 2013. (ECF No. 91). Respondents filed a Reply to Plaintiff's objections

1

on February 25, 2013. (ECF No. 93). Also pending before the court is Plaintiff's Motion for Temporary Restraining Order wherein Plaintiff asks the court to require officials at Perry Correctional Institution to return Plaintiff's legal materials that he alleges were wrongfully confiscated. (ECF No. 95 at 3). Defendants oppose Plaintiff's Motion for Temporary Restraining Order. (ECF No. 96). The Magistrate Judge assigned to this matter has issued a comprehensive Report and Recommendation ("Report") and recommends the Court grant Defendants' motion for summary judgment. (ECF No. 87.)

## FACTUAL AND PROCEDURAL BACKGROUND

The Report sets forth the relevant facts and the Court incorporates them and summarizes them below in relevant part.

Plaintiff is an inmate in the South Carolina Department of Corrections ("SCDC") and is currently housed at Perry Correctional Institution in Pelzer, South Carolina. Plaintiff initiated this action on February 21, 2012 (ECF No.1), and filed an amended complaint on March 5, 2012. (ECF No. 8). Plaintiff sets forth claims arising out of an incident that occurred on October 3, 2010. Plaintiff seeks actual and punitive damages as well as injunctive relief. (ECF No. 8 at 7-8).

On August 22, 2012, Defendants filed a motion for summary judgment on September 17, 2012, setting forth several arguments in support of summary including that the matters asserted by the Plaintiff do not fall within the scope of 42 U.S.C. §1983. (ECF No. 50). The Magistrate Judge reviewed the matter and has filed a Report wherein he recommends that the court grant Defendants' motion for summary judgment. For the reasons that follow, the court adopts the Report except to the extent it recommends granting summary judgment as to Plaintiff's cause of action for excessive force.

**REPORT AND RECOMMENDATION**

The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the Court retains the responsibility for making a final determination. *Mathews v. Weber*, 423 U.S. 261, 269, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). This Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and this Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.A., § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate with instructions." *Id.* In the absence of specific objections to the Report, this Court is not required to give any explanation for adopting the recommendation. *Camby v. Davis*, 718 F.2d 198 (4th Cir.1983).

**LEGAL STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

## **DISCUSSION**

In the instant action, Plaintiff's alleged several claims against Defendants including claims of excessive force, claims relating to his conditions of confinement, deliberate indifference to medical needs, property claims, denial of access to the courts, and the mishandling of grievances. The Magistrate Judge addressed each claim in detail as well as defenses raised. The Magistrate Judge opined that: 1) The allegations in Plaintiff's complaint fail to support a claim of excessive force and do not give rise to a genuine issue of fact as to whether constitutionally excessive force was used against Plaintiff; 2) Plaintiff has not stated a conditions of confinement claim based on either not being allowed to shower or wash off any residuals of chemical munitions or his medical complaints of not being provided medical care; 3) Plaintiff's complaint does not set forth a viable property deprivation claim under § 1983 because Plaintiff has not alleged that his property was lost, destroyed or stolen because Defendants failed to properly follow established prison policy with respect to the handling of his personal property; 4) Plaintiff has failed to establish a viable access to court claim since he has not provided evidence showing that he has been prejudiced in any court proceeding due to any delay in his receipt of legal materials or in not being able to receive legal materials; 5) Plaintiff's claim that Defendant Snyder mishandled his grievances is not a claim congizable under § 1983, as there is no right to access a grievance procedure; 6) inmates have no general constitutional right to placement in any particular prison or to certain privileges nor do they have a constitutional right to placement in any particular custody classification, as such Plaintiff's complaints about being placed in the Secured Management Unit and/or suicide watch do not rise to the level of a constitutional violation. Plaintiff filed timely objections to the Report (ECF No. 91) and this

court will consider them here.

## OBJECTIONS

### Classification

Plaintiffs first and eleventh objections relate to Plaintiff's prison classification. Plaintiff asserts that he was taken out of the general population and placed in the Secured Management Unit ("SMU") for no reason and contends this was a violation of his constitutional rights. (ECF No. 91 at 2). In both of these objections instead of setting forth a specific objection, Plaintiff generally rehashes his prior arguments on these issues.

Plaintiff does not have a constitutional right to be held in a certain classification, *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994), nor does he have a liberty interest in his level of classification. *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Thus, Plaintiff has failed to state a claim regarding his classification and summary judgment is proper. Plaintiff's objection is overruled.

### Incorrect Factual Statements

Plaintiff's second and third objections relate to alleged incorrect factual statements in the Report. The Court has reviewed the Report and finds that the statements set forth by the Magistrate Judge are correct and are based on representations set forth in Plaintiff's Amended Complaint. (ECF No. 8 at pp. 3-4). As such Plaintiff's objections are overruled.

### Excessive Force

Plaintiff has not set forth a viable claim for excessive force. Plaintiff's fourth objection and sixth objection relate to the Magistrate Judge's determination that Plaintiff has not set forth a viable claim for excessive force.

The use of excessive force upon an inmate by correctional officers violates the

Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 117 L.Ed. 2d 156 (1992). To state an excessive force claim, an inmate must show (1) that the correctional officers acted with a sufficiently culpable state of mind and (2) that the harm inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires the inmate to demonstrate the officer applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson,* 503 U.S. at 6–7. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.*" Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). When evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7 (citations omitted). The objective component of an excessive force claim is not nearly as demanding to establish because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . . whether or not significant injury is evident." *Id*. at 9 (internal citation omitted).

This incident that precipitated this lawsuit occurred on October 3, 2010. The following facts are taken from the Magistrate Judge's Report. Plaintiff and another inmate allegedly flooded out their cells and Officer Chad Binkley, who is an officer at the Perry Correctional Institution, attests that he was a part of an extraction team to remove Plaintiff from his cell. Once the extraction team was assembled, Defendant Harcouff gave an order

6

for Plaintiff to come to the cell door to be handcuffed. When Plaintiff allegedly did not comply, Defendant Harcouff administered a short blast of chemical munitions or mace into Plaintiff's cell to gain Plaintiff's compliance. Binkley indicated that chemical munitions are used prior to physical forces as there is less risk of physical harm to the inmate and the officers. Binkley attests that Defendant Harcouff opened the outer door and Plaintiff remained at the back of his cell and refused to come forward to be handcuffed. Harcouff then administered another short burst of chemical munitions into the cell and once more Harcouff directed Plaintiff to come to the cell door to be handcuffed. Plaintiff refused and Harcouff administered another short burst of chemical munitions into the cell.

Binkley attests that Plaintiff still refused to come forward, which time the extraction team entered Plaintiff's cell and restrained Plaintiff. Binkley attests that there were five (5) officers on the extraction team, not including the officer who videotaped the incident. One officer was assigned to the protective shield, while the other four officers were each assigned to take control of one of Plaintiff's limbs. Binkley attests that the officer with the shield, Sergeant Arrowood, entered the cell first and used the shield to pin Plaintiff against the back of the wall. Plaintiff was then placed on the floor so he could be placed into restraints. Binkley attests that officers are trained to place an inmate face down on the ground or floor, as this allows them to gain better control of the inmate and decreases the risk of potential harm to both the officers and the inmate. Plaintiff was placed in restraints and was then removed from the cell and taken to the hallway. Binkley attests that during this process there was a small amount of water on the cell floor and also in the hallway, but that there are drains in the hallway so that any water will drain away and the amount of water present was only a minimal amount. Binkley attests that once Plaintiff was out of his

cell, officers went into his cell to remove his personal property, while other officers removed Plaintiff's jumpsuit and clothing. Binkley attests that Plaintiff was being placed on "control cell" because he had flooded his cell, and that while on control cell inmates are stripped of all personal property. Additionally, Plaintiff's clothing was wet and was also contaminated with chemical munitions. Binkley attests that Plaintiff's uniform was cut off because it could not be removed in any other manner while he was in restraints, and that because of his agitated state, the officers did not want to risk removing his restraints to try and take off the uniform. Binkley attests that it creates a dangerous situation when an agitated inmate has one handcuff removed because the inmate can use the remaining handcuff as a weapon. Once Plaintiff's clothing was removed, he was returned to his cell.

Here, there is no dispute officers used force against Plaintiff when they secured him to remove him from his cell and when they used chemical munitions against him prior to removing him from his cell; the issue is whether the officers used excessive force. The facts are in dispute about whether the force used was necessary. The record reflects that after Plaintiff allegedly failed to come to the door to be handcuffed that Defendant Harcouff administered chemical munitions into Plaintiff's cell. Neither Defendant Harcouff or any of the other officers address why it was necessary to gas Plaintiff for three or more times prior to his removal from the cell.[1]

Further Defendant Harcouff does not address how Plaintiff posed a threat to him or the other officers or fails to address how they were threatened through Plaintiff's cell door, after Plaintiff had been gassed. The facts are also in dispute as to whether Plaintiff

---

[1] A genuine issue of fact exists as to how many time Plaintiff was gassed.

complied with directives given by officers before they entered his cell. While Defendant Harcouff alleges Plaintiff refused to come to the door to be handcuffed and alleges noncompliance with directives, Plaintiff avers he was attempting to comply with Harcouff's directives when he was gassed.

Regarding the deployment of mace in correctional facilities, generally, "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir.1984). Accordingly, courts closely scrutinize its use, evaluating the "totality of the circumstances, including the provocation, the amount of gas used, and the purposes for which the gas is used [to] determin[e] the validity of the use . . . in the prison environment." *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir.1984). Applying this totality of the circumstances approach, the Fourth Circuit has found that mace can be used constitutionally in small quantities to "prevent riots and escapes" or to control a "recalcitrant inmate." *Landman v. Peyton*, 370 F.2d 135, 138, n. 2 (4th Cir.1966). Here there was no apparent riot or escape attempt.

Crediting Plaintiff's version of what occurred, it cannot be said that force was applied in a good faith effort to maintain or restore discipline. Under these facts, it cannot be said Defendants were trying to restore order. The facts are in dispute as to whether or not Plaintiff was disobeying directives when the officers entered his cell. The Court is unable to assess the relationship between the need and the amount of force that was used. Further, the Court is unable to determine whether there was any reasonably perceived threat that the application of force was intended to quell or whether any effort was made to temper the severity of a forceful response. The extent of Plaintiff's injuries are also in

conflict. Because this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct 2727, 73 L.Ed.2d 396 (1982) and its progeny is inappropriate as well. Accordingly, Defendants in their individual capacities are not entitled to summary judgment on Plaintiff's excessive force claim.

**Property Deprivation**

Plaintiff's fifth and ninth objections concern his claims of property deprivation. Even if Plaintiff's Complaint is liberally construed as asserting a claim under § 1983 for violation of the Due Process Clause of the Fourteenth Amendment, this Court would lack jurisdiction in this case. The Due Process Clause is not implicated by a negligent act of a governmental official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 Led.2d 662 (1986); *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir.1995). Thus, to the extent Plaintiff complains of negligent conduct by Defendants, he cannot bring this action in this Court under § 1983. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200–03, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("[t]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation"). Even an intentional deprivation of property by a governmental employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. *See Hudson v. Palmer*, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Mora v. City of Gaithersburg, MD*, 519 F.3d 216, 230–31 (4th Cir.2008) (concerning the intentional taking of guns and ammunition from the plaintiff); *Bogart v. Chapell*, 396 F.3d 548, 561–63 (4th Cir.2005) (finding that intentional destruction of the plaintiff's animals did not violate the due process clause because South Carolina afforded a meaningful

post-deprivation remedy for the loss of animals).

Plaintiff has a meaningful remedy under South Carolina law to obtain relief for Defendants' alleged loss of Plaintiff's personal property, by bringing an action against the State of South Carolina in state court, pursuant to the South Carolina Tort Claims Act, S.C.Code § 15–78–10 *et seq*. *See Mora*, 519 F.3d at 231 (the state courts were open to Mora for claims of conversion or trespass to chattels and there was no reason to think that the State process was constitutionally inadequate); *see also Hudson v. Palmer*, 468 U.S. at 530–536 (1984) (holding that intentional deprivations of property by State employees do not violate due process until and unless the State refuses to provide a suitable post-deprivation remedy); *Plumer v. State of Maryland*, 915 F.2d 927, 930–31 (4th Cir.1990) (where a state actor commits an "unauthorized act" of taking property then an adequate state post-deprivation procedure satisfies due process); *Yates v. Jamison*, 782 F.2d 1182, 1183–184 (4th Cir.1986) (holding that a federal district court should deny § 1983 relief if state law provides a plaintiff with a viable remedy for the loss of personal property even if the deprivation was caused by an employee of the state, an employee of a state agency, or an employee of a political subdivision of a state).[2]  As such Plaintiff's objection is overruled.

---

[2] *Yates* has been partially overruled for cases where Plaintiffs allege deprivations of intangible interests, such as a driver's license or "liberty[.]"  *Plumer v. Maryland*, 915 F.2d 927, 929–32 & nn. 2–5 (4th Cir.1990); *see also Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).  However, the holding in *Yates* is still binding on lower federal courts in the Fourth Circuit in cases involving deprivations of personal property.

**Condition of Confinement**

In Plaintiff's seventh objection, he objects to the Magistrate Judge's discussion of the conditions of his confinement wherein the Magistrate determined that Plaintiff had not set forth a viable constitutional claim.

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993) (*quoting Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991)). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. *See Strickler*, 989 F.2d at 1380–81. "Only extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim regarding conditions of confinement." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir.2003); *see also White v. Gregory*, 1 F.3d 267, 269 (4th Cir.1993) ("[A] prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") (citation omitted). Also, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. *See Ohm v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed. 813 (1983).

"[T]he Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminals pay for their offenses against society." *Id.* at 338.

Here, Plaintiff asserts that he was stripped naked and place inside a contaminated cell with feces and urine water on the floor. He further asserts that he had no running water in his cell such that he could decontaminate himself from the chemical munitions that that were sprayed upon him.

Upon review, the review of Plaintiff's medical records, the court is unable to find that Plaintiff has presented evidence to show the type of serious injury required to state a cognizable claim of cruel and unusual punishment. *Strickler*, 989 F.2d at 1381 ("plaintiff must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions"). Additionally, Plaintiff has failed to show that Defendants acted with a "sufficiently culpable state of mind" to cause Plaintiff's pain. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir.1995). Thus, Plaintiff's objection is overruled.

**Denial of Medical Treatment**

Plaintiff's Eighth objection relates to his allegation that he was denied medical attention.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 102, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, the Fourth Circuit

13

Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." 896 F.2d 848, 851 (4th Cir.1990). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. 104. "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann*, 906 F.Supp. 1025, 1037 (E.D.Va.1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Upon review of the record, including Plaintiff's medical records, the court does not find that Plaintiff has presented evidence sufficient to create a genuine issue of material fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Plaintiff's two medical records after the October 3, 2010, incident do not reflect any significant medical problems relating to the incident. The only evidence before the court is Plaintiff's own conclusory and self-serving statements that he suffered medical problems as a result of this incident. *See House v. New Castle County*, 824 F. Supp. 47, 485 (D. Md. 1993)(Plaintiff's conclusory allegations insufficient to maintain claim.) For these reasons, Plaintiff's objection is overruled.

### **Access to Court**

Plaintiff's tenth objection concerns his not receiving and being able to retain crime

scene photographs. Plaintiff asserts that the photographs were from his Public Defender and that Defendant Davis should have sent his correspondence to the Review Committee for consideration pursuant to SCDC policy instead of returning the correspondence to the sender.

Prisoners do not have a cause of action under § 1983 for negligent interference by prison officials with their right of access to the courts. *Pink v. Lester*, 52 F.3d 73 (4th Cir.1995) ("negligent denial of access to the courts is not actionable under § 1983.") A prisoner must allege adverse consequence as a basis for allegations that the defendant's actions deprived him of meaningful access to the courts. *White v. White*, 886 F.2d 721 (4th Cir.1989). Actual injury must be more than theoretical deficiencies, it is showing that the alleged deficiencies have hindered or are hindering a prisoner's efforts to pursue a legal claim. *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). Here, Plaintiff fails to show that Defendant Davis' actions deprived him of meaningful access to the court. At most Plaintiff has set forth a violation of prison policy and not a constitutional violation. *See Keeler v. Pea*, 782 F. Supp. 42, 44 (D.S.C. 1992). Accordingly, Plaintiff's objection is overruled.

## MOTION FOR INJUNCTIVE RELIEF AND TEMPORARY RESTRAINING ORDER

The court notes that Plaintiff seeks injunctive relief in the form of a temporary restraining order and preliminary injunction. (ECF No. 95). Defendants oppose Plaintiff's motion and argue that Plaintiff has failed to satisfy the four factors for a preliminary injunction. (ECF No.96 at 2).

Injunctive relief is an extraordinary remedy "involving the exercise of very far-reaching power" and should "be granted only sparingly and in limited circumstances."

*In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524 (4th Cir.2003), abrogated on other grounds by *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). A plaintiff seeking either a temporary restraining order or a preliminary injunction must establish each of the following elements: (1) the likelihood that the Plaintiff will succeed on the merits; (2) the likelihood of irreparable harm to the Plaintiff if the injunction is not granted; (3) that the balance of equities tips in his or her favor; and (4) that the injunction is in the public interest. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 19–20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir.2009), *overruling Blackwelder Furniture Co. of Statesville v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir.1977). Moreover, a plaintiff must demonstrate more than the mere possibility of irreparable harm, as injunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the Plaintiff is entitled to such relief. *See Real Truth*, 575 F.3d at 346 (*citing Winter*, 555 U.S at 19–22).

Here, Plaintiff has failed to identify, argue, or offer proof of any of the required elements needed. Accordingly, Plaintiff's Motion for Preliminary Injunction and Temporary Restraining order (ECF No. 95) must be DENIED.

## **CONCLUSION**

The Court has thoroughly analyzed the entire record, including the Report, objections to the Report, and the applicable law. For the reasons stated above and by the Magistrate Judge, Plaintiff's objections are overruled as to all claims except Plaintiff's claim of excessive force. Further, Plaintiff's Motion for a Temporary Restraining Order is DENIED. The Magistrate Judge's Report is adopted in part and denied in part and

incorporated by reference to the extent it is consistent with this Order.

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment (ECF No. 59) is **GRANTED** in part and DENIED in part. Defendants' motion for summary judgment is denied as to excessive force.

**IT IS SO ORDERED**.

/s/ Mary G. Lewis
United States District Judge

Spartanburg, South Carolina
September 30, 2013